**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SEIZED PROPERTY RECOVERY CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 05-CIV-1962 (RCL)** |
| | ) | |
| **U.S. DEPARTMENT OF STATE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT DEPARTMENT OF STATE'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and L. Cv. R. 7 and 56.1, defendant United States

Department of State ("DOS" or the "Department"), through the United States Attorney for the

District of Columbia, respectfully submits its motion for summary judgment.

In this Freedom of Information Act ("FOIA") lawsuit, no material facts are in dispute

regarding plaintiff's FOIA request to the Department of State, which sought copies of DSP-61s

submitted by foreign governments to the Department of State.  The DSP-61 is an application for

a license for the temporary import and subsequent export of defense articles – it becomes a

license when it is approved by the Department of State.  The Arms Export Control Act

("AECA") and the Export Administration Act (as incorporated into the AECA) prohibit the

Department from releasing information from DSP-61 applications.  Accordingly, DSP-61

applications are exempt from disclosure pursuant to FOIA exemption (b)(3), 5 U.S.C. §

552(b)(3).   The AECA permits the release of certain limited information from DSP-61 licenses

(i.e., approved DSP-61 applications), and the Department has released this information from the

DSP-61s sought by plaintiff that resulted in licenses.  Accordingly, it has released all reasonably

segregable, non-exempt information.

In support of its motion, DOS submits the accompanying Statement of Material Facts Not In Dispute; Memorandum of Points and Authorities; the attached declaration of Margaret P. Grafeld ("Grafeld Decl."); and a proposed Order.

Respectfully submitted,

___/s/_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney


___/s/_____
R. CRAIG LAWRENCE , D.C. BAR #171538
Assistant United States Attorney


___/s/_____
BENTON G. PETERSON, W.I. BAR #1029849
Assistant United States Attorney
555 Fourth Street, NW,
Washington, D.C. 20530
(202) 514-7238


OF COUNSEL

BRIAN J. EGAN
Attorney-Adviser
United States Department of State,
Office of the Legal Adviser
2201 C St. NW, Room 3422
Washington, D.C.  20520
(202)647-2227

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SEIZED PROPERTY RECOVERY CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-CIV-1962 (RCL) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT DEPARTMENT OF STATE'S MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this lawsuit, plaintiff Seized Property Recovery Corporation ("SPRC") alleges that the United States Department of State ("DOS" or the "Department") improperly withheld records in response to SPRC's Freedom of Information Act ("FOIA") request for DSP-61s submitted by foreign governments to import temporarily, and then export, defense articles for military training purposes.

As explained herein and in the attached declaration of Margaret P. Grafeld ("Grafeld Decl."), the Department searched its database of DSP-61 information and identified 728 DSP-61s that had been submitted by foreign governments during the time period requested by plaintiff. These DSP-61s are applications for licenses for the temporary import and subsequent export of unclassified defense articles. DSP-61 license applications are exempt from disclosure under Exemption (b)(3) of the FOIA, 5 U.S.C. § 552(b)(3), which prohibits disclosure of records that are "specifically exempted from disclosure by statute." The Arms Export Control Act (the

1

"AECA") and the provisions of the Export Administration Act ("EAA") incorporated into the AECA explicitly prohibit the Department from releasing "information obtained for the purpose of consideration of, or concerning, license applications" such as DSP-61s.

Because the AECA permits the release of a limited amount of information pertaining to issued licenses, the Department has identified those responsive DSP-61 applications that have resulted in licenses, and has released all information about those DSP-61s for which the AECA permits release.  In other words, the Department has released all reasonably segregable information from the DSP-61s that were requested by plaintiff.

Accordingly, summary judgment should be granted for the Department.

## BACKGROUND

**I.     PROCEDURAL BACKGROUND**

By letter to the Department dated July 11, 2005 and submitted electronically via the Department's FOIA website, counsel for plaintiff requested "copies of DSP61s submitted by foreign governments to import military equipment and supplies into the United States for training and related activities."  Defendant Department of State's Statement of Material Facts Not in Dispute ("SMF") 1.  The FOIA request sought such records dating from July 1, 2003 to the present.  SMF 1.  Plaintiff's FOIA request initially stated that the Department should limit its search to records in the Department's centralized files (the State Archiving System).  SMF 1.

Plaintiff wrote letters to the Department dated August 1 and 18, 2005, which demanded that the Department acknowledge its FOIA request and which threatened litigation unless the Department produce responsive documents by August 31, 2005.  SMF 3, 4.  (Plaintiff's FOIA requested had actually been acknowledged by e-mail on July 11, 2005.  SMF 2.)

2

By letter to counsel for plaintiff dated August 19, 2005, the Department again acknowledged receipt of its FOIA request (to which it had assigned case number 200503132) and explained that the processing of the request had begun.  SMF 5.

In a telephone conversation on September 6, 2005, a FOIA case analyst from the Department's Office of Information Programs and Services ("IPS") explained to counsel for plaintiff that DSP-61s would not be located in the Department's centralized files (the State Archiving System).  SMF 6.   The IPS case analyst suggested that plaintiff expand its search to include records from the Department's Bureau of Political-Military Affairs, and counsel for plaintiff agreed to expand its requested search in this manner.  SMF 6.

Plaintiff filed suit on October 3, 2005.  SMF 7.  By letter to counsel for plaintiff dated November 16, 2005, the Department responded to its FOIA request by denying it in full under FOIA exemption (b)(3), 5 U.S.C. § 552(b)(3).  SMF 8, 9.  The Department's letter stated that approximately 728 DSP-61s submitted by foreign embassies during the relevant time period had been located, but explained that Section 12(c) of the Export Administration Act (which was incorporated into Section 38(e) of the Arms Export Control Act) required that these DSP-61s be withheld from public disclosure.  SMF 8, 9.  Section 12(c) of the Export Administration Act states that "information obtained for the purpose of consideration of, or concerning, license applications under this Act . . . shall be withheld from public disclosure unless the release of such information is determined by the secretary to be in the national interest."  SMF 9.  The letter further explained that DSP-61 applications submitted by foreign governments were subject to this confidentiality provision and no national interest determination had been made as to their

3

release.  SMF 9.

By letters to the defendant dated November 23, 2005, counsel for plaintiff requested that the Department conduct a segregability analysis on the requested DSP-61s submitted by foreign governments and release any portions for which "no national interest determination is required," and sought clarification about the statutory provision that prohibited release.  SMF 10, 11.  By letter dated December 13, 2005, counsel for defendant explained that the DSP-61 applications contained no reasonably segregable, non-exempt information because they consisted entirely of "information obtained for the purpose of consideration of, or concerning, license applications," which is governed by the confidentiality provision of the Export Administration Act (and for which a national interest determination would be required).  SMF 12.

By letter dated January 12, 2006, the Department released to plaintiff portions of 652 of the 728 DSP-61s described in its November 16, 2005 letter.  SMF 13.  The letter explained that although plaintiff had requested DSP-61 applications submitted by foreign governments (which are exempt from disclosure in their entirety), the Department had elected to release limited information permitted by 22 U.S.C. § 2778(e)  from those DSP-61s submitted by foreign governments that resulted in licenses.  SMF 13.  Defendant also attempted to identify the subset of those 652 DSP-61s it was releasing in part that related to "training and related activities" as requested by plaintiff.  SMF 13.

## II.    THE DEFENSE EXPORT LICENSING PROCESS AND DSP-61s

Form DSP-61 is an application for a license issued by the Department of State, Directorate of Defense Trade Controls, "for the temporary import and subsequent export of

4

unclassified defense articles." 22 C.F.R. § 123.3(a); see also SMF 14, 22 C.F.R. § 123.1(a)(3).[1]

The DSP-61 constitutes a license when it is approved by the Department of State and returned to

the applicant.  SMF 15.  Plaintiff's FOIA request seeks a subset of DSP-61 license applications,

i.e., "copies of DSP61s submitted by foreign governments to import military equipment and

supplies into the United States for training and related activities."  SMF 1.

The Department processes DSP-61 license applications as part of its responsibility to

regulate the export of defense articles.  SMF 14.  Section 38(a) of the Arms Export Control Act

("AECA")[2] authorizes the President "to control the import and the export of defense articles."  22

U.S.C. § 2778(a).   The President has delegated his authority (derived from Section 38(a) of the

AECA) to regulate the export of defense articles to the Department of State.  See 22 C.F.R. §

120.1; Executive Order 11958 (as amended) sec. 1(l)(1).  The DSP-61 is one of several defense

export licenses that is administered by the Department of State pursuant to the AECA.[3]

Section 38(e) of the AECA, 22 U.S.C. § 2778(e), incorporates several sections of the

---

[1]  "Defense articles" include any item or technical data designated on in the United States
Munitions List, which can be found at 22 C.F.R. § 121.  See 22 C.F.R. § 120.6.

[2]  The AECA is codified at 22 U.S.C. § 2751 et seq.

[3]  Another agency – The Department of Justice, Bureau of Alcohol, Tobacco, and
Firearms – regulates the import of defense articles into the United States.  See, e.g., 27 C.F.R. §
447.  Therefore, although DSP-61 license applicants seek approval both for the temporary import
and subsequent permanent export of defense articles, the Department of State processes these
applications in the course of carrying out its delegated responsibilities under the AECA, which
are to regulate the export of defense articles.  See also 22 C.F.R. § 120.18 (defining "temporary
import" as "bringing into the United States from a foreign country any defense article that is to be
returned to the country from it was shipped or taken, or any defense article that is in transit to
another foreign destination").

5

Export Administration Act ("EAA")[4] into the AECA's export regulation regime.  22 U.S.C. §

2778(e) states:

> **Enforcement powers of President.**  In carrying out functions
> under this section with respect to the export of defense articles and
> defense services, the President is authorized to exercise the same
> powers concerning violations and enforcement which are conferred
> upon departments, agencies and officials by subsections (c), (d),
> (e), and (g) of section 11 of the Export Administration Act of 1979
> [50 USCS Appx § 2410], and by subsections (a) and (c) of section
> 12 of such Act [50 USCS Appx § 2411(a) and (c)], subject to the
> same terms and conditions as are applicable to such powers under
> such Act, except that section 11(c)(2)(B) of such Act [50 USCS
> Appx. § 2410(c)(2)(B)] shall not apply, and instead, as prescribed
> in regulations issued under this section, the Secretary of State may
> assess civil penalties for violations of this Act and regulations
> prescribed thereunder and further may commence a civil action to
> recover such civil penalties, and except further that the names of
> the countries and the types and quantities of defense articles for
> which licenses are issued under this section shall not be withheld
> from public disclosure unless the President determines that the
> release of such information would be contrary to the national
> interest. Nothing in this subsection shall be construed as
> authorizing the withholding of information from the Congress.
> Notwithstanding section 11(c) of the Export Administration Act of
> 1979 [50 USCS Appx § 2410(c)], the civil penalty for each
> violation involving controls imposed on the export of defense
> articles and defense services under this section may not exceed $
> 500,000.

One of the EAA provisions explicitly incorporated into the AECA by this provision is Section

12(c) the EAA, which states that "information obtained for the purpose of consideration of, or

---

[4] 50 U.S.C. app. § 2401 et seq.  The EAA regulates the export of items that can be used
for both military and civilian purposes.  Although the EAA expired on August 20, 2001, its
provisions remain in effect pursuant to Executive Order 13222, which states that "the provisions
of the Export Administration Act of 1979, as amended, and the provisions for administration of
the Export Administration Act of 1979, as amended, shall be carried out under this order so as to
continue in full force and effect."  66 Fed. Reg. 44025, Aug. 17, 2001; see also Wisconsin
Project v. United States Dep't of Commerce, 317 F.3d 275 (D.C. Cir. 2003) (recognizing the
continued viability of the EAA).

concerning license applications under this Act shall be withheld from public disclosure unless the release of such information is determined by the Secretary to be in the public interest." EAA Sec. 12(c), 50 U.S.C. app. § 2411(c) (incorporated by reference into the AECA at 22 U.S.C. § 2778(e)).

AECA Section 38(e) includes only one exception to the non-disclosure provision of section 12(c) of the EAA. AECA Section 38(e) states that "the names of the countries and the types and quantities of defense articles for which licenses are issued shall not be withheld from public disclosure unless the President determines that the release of such information would be contrary to the public interest." 22 U.S.C. § 2778(e) (emphasis added).

The Department of State's International Traffic in Arms Regulations (the "ITAR"), 22 C.F.R. §§ 120-130, are the regulations implementing the Department's authority to regulate the export of defense articles. 22 C.F.R. § 120.1. The ITAR also references the confidentiality provision of the EAA that is incorporated into Section 38(e) of the AECA. As explained in the ITAR,

> "Section 38(e) of the Arms Export Control Act (22 U.S.C. 2778) provides by reference to certain procedures of the Export Administrative Act that certain information required by the Department of State in connection with the licensing process may generally not be disclosed to the public unless certain determinations relating to the national interest are made in accordance with the procedures specified in that provision, except that the names of the countries and the types and quantities of defense articles for which licenses are issued under this section shall not be withheld from public disclosure unless the President determines that release of such information would be contrary to the national interest. Determinations required by section 38(e) shall be made by the Assistant Secretary for Political-Military Affairs."

7

22 C.F.R. § 126.10(b).

## ARGUMENT

**I.    THE DEPARTMENT OF STATE IS ENTITLED TO SUMMARY JUDGMENT.**

    A.    <u>The standard for summary judgment under the FOIA.</u>

    FOIA lawsuits "are typically and appropriately decided on motions for summary judgment." <u>Harrison v. Exec. Office for United States Attys.</u>, 377 F. Supp. 2d 141, 145 (D.D.C. 2005) (Lamberth, J.).  For an agency to prevail on a motion for summary judgment in a FOIA action, it must prove that no genuine issue of material fact exists, viewing the facts in the light most favorable to the requester.  <u>See</u> <u>Weisberg v. U.S. Department of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Fed. R. Civ. P. 56(c).  In ruling on the Department's motion for summary judgment in this FOIA lawsuit, the Court must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure under the FOIA." <u>Assassination Archives & Research Ctr. v. CIA</u>, 334 F.3d 55, 57 (D.C. Cir. 2003).  An agency's decision to withhold information from a FOIA requester is subject to <u>de novo</u> review.  5 U.S.C. § 552(a)(4)(B).

    B.    <u>The Department of State has not improperly withheld records under the FOIA.</u>

    The FOIA permits requesters to file suit when they allege that agency records have been "improperly withheld." 5 U.S.C. § 552(a)(4)(B).  To prevail in a FOIA lawsuit, an agency must demonstrate that its search was adequate and that the materials it withheld fall within a FOIA exemption.  <u>See</u> <u>Judicial Watch, Inc. v. U.S. Dep't. of Commerce</u>, 337 F. Supp. 2d 146, 158 (D.D.C. 2004) (citing <u>Weisberg v. U.S. Dep't of Justice</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

    1.    <u>The Department has conducted an adequate search for records.</u>

    "To obtain summary judgment on the issue of the adequacy of the search for records

8

under FOIA, an agency must show viewing the facts in the light most favorable to the requester,
that it has conducted a search reasonably calculated to uncover all relevant documents."
Harrison, 377 F. Supp. 2d at 146 (citations and internal punctuation omitted). As explained
below, although it is unclear whether plaintiff is challenging the adequacy of the Department's
search, the Department clearly conducted a reasonable search for responsive records.

For one, the Department helped plaintiff locate responsive records within the Department
even though it could have simply returned a "no records" response in response to plaintiff's
FOIA request. Plaintiff's request had initially been limited to the Department's centralized files
(the State Archiving System). SMF 1. In a telephone conversation on September 6, 2005, a
FOIA case analyst from the Department's Office of Information Programs and Services ("IPS")
explained to counsel for plaintiff that DSP-61s would not be located in the Department's
centralized files, and gave plaintiff the opportunity to expand the search to include other records.
SMF 6. Counsel for plaintiff agreed that the Department should expand its search. SMF 6.

The Department then searched for DSP-61s in the Directorate of Defense Trade Controls
("DDTC"), which is located in the Department's Bureau of Political-Military Affairs. SMF 8.
The DDTC is responsible for processing all DSP-61s and other applications submitted to the
Department pursuant to its authorities under the Arms Export Control Act ("AECA"). SMF 14 .
A search of the DDTC's database, which contains all DSP-61 applications from the relevant time
period, identified 728 DSP-61 applications that had been filed by foreign embassies with the
Department of State covering the time period that was the subject of plaintiff's FOIA request.
SMF 8, 17. Further searches of the DDTC database revealed that 652 of those 728 DSP-61

applications resulted in licenses, 48 of which included the word "train" or "training" (or similar

word) in the "purpose" or "commodity" field of the DSP-61 application.  SMF 13.

> 2.    <u>The requested records are exempt from disclosure pursuant to FOIA
> Exemption (b)(3), 5 U.S.C. § 552(b)(3).</u>

Exemption (b)(3) of the FOIA permits agencies to withhold information "specifically

exempted from disclosure by statute (other than section 552(b) of this title), provided that such

statute (A) requires that the matters be withheld from the public in such a manner as to leave no

discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular

types of matters to be withheld."  5 U.S.C. § 552(b)(3).  "Exemption 3 differs from other FOIA

exemptions in that its applicability depends less on the detailed factual contents of specific

documents; the sole issue for decision is the existence of a relevant statute and the inclusion of

withheld material within that statute's coverage."  <u>Goland v. CIA</u>, 607 F.2d 339, 350 (D.C. Cir.

1978), <u>cert. denied</u>, 445 U.S. 927 (1980).

It is beyond dispute that Section 12(c) of the EAA[5] (as incorporated into 22 U.S.C. §

2778(e)) qualifies as an exemption statute under 5 U.S.C. § 552(b)(3).  Section 12(c) of the EAA

states that "information obtained for the purpose of consideration of, or concerning license

applications . . . shall be withheld from public disclosure unless the release of such information is

determined by the Secretary to be in the public interest."   50 U.S.C. app. § 2411(c).  The statute

explicitly requires that certain materials be withheld from the public, and it establishes particular

---

[5]  Although the EAA expired on August 20, 2001, its provisions remain in effect pursuant
to Executive Order 13222, which states that "the provisions of the Export Administration Act of
1979, as amended, and the provisions for administration of the Export Administration Act of
1979, as amended, shall be carried out under this order so as to continue in full force and effect."
66 Fed. Reg. 44025, Aug. 17, 2001

criteria for withholding and refers to particular types of matters to be withheld.

Congress enacted the confidentiality provision of the EAA specifically to "clarif[y] the exemption of information required to be furnished pursuant to the Act . . . from the disclosure requirements of the Freedom of Information Act." S. Rep. No. 96-169, Export Administration Act of 1979 at 17 (1979), 1979 U.S.C.C.A.N. 1147, 1164. The confidentiality provision of the EAA is entirely consistent with other statutory provisions that protect the disclosure of sensitive business and commercial information, including FOIA exemption (b)(4), 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905.

Courts have routinely found that EAA section 12(c) qualifies as a FOIA exemption statute. In Wisconsin Project on Nuclear Arms Control v. United States Dep't of Commerce, 317 F.3d 275, 281 (D.C. Cir. 2003), the D.C. Circuit "ha[d] little difficulty concluding that section 12(c) qualifies as an Exemption 3 statute," because the statute "specifies the particular types of matters to be withheld."[6] Similarly, in Judicial Watch, Inc. v. U.S. Dep't. of Commerce, 337 F. Supp. 2d 146, 167 (D.D.C. 2004), this Court concluded that the Department of Commerce properly invoked EAA section 12(c) to withhold "information obtained with respect to license applications."

Section 38(e) of the AECA, 22 U.S.C. § 2778(e) explicitly incorporates section 12(c) of EAA into the AECA's export regulation regime. 22 U.S.C. § 2778(e) authorizes the use of the "same powers concerning violations and enforcement" authorized by section 12(c) and several

---

[6] The Court also held that, notwithstanding the EAA's lapse on August 20, 2001, the statute had continued vitality as an Exemption 3 statute pursuant to Executive Order 13222. See Wisconsin Project, 317 F.3d at 284.

11

other sections of the EAA, subject to "the same terms and conditions as are applicable to such powers. . . ."

Section 38(e) of the AECA, 22 U.S.C. § 2778, contains a single exception to the non-disclosure provision of section 12(c) of the EAA.  AECA Section 38(e) states that "the names of the countries and the types and quantities of defense articles for which licenses are issued shall not be withheld from public disclosure unless the President determines that the release of such information would be contrary to the public interest."  22 U.S.C. § 2778(e) (emphasis added). This exception is not applicable to plaintiff's FOIA request, which seeks DSP-61 application information "submitted by foreign governments" rather than information about issued licenses. SMF 1.  Accordingly, the Department initially denied plaintiff's request in full.  SMF 9, 12. Nonetheless, because the Department is permitted to release certain information from DSP-61 applications that result in licenses, the Department has identified those DSP-61 applications that were requested by plaintiff and that resulted in licenses, and it has released the "names of the countries and the types and quantities of defense articles" from these DSP-61s as permitted by 22 U.S.C. § 2778(e).  SMF 13.

It is also beyond dispute that the documents requested by plaintiff fall within the coverage of Section 12(c) of the EAA, as incorporated into 22 U.S.C. § 2778(e).  Plaintiff requested "copies of DSP61s submitted by foreign governments to import military equipment and supplies into the United States for training and related activities."  The DSP-61 is a license application. SMF 14.  EAA Section 12(c) explicitly restricts the public disclosure of  "information obtained for the purpose of consideration of, or concerning license applications."

3.     The Department has released all reasonably segregable non-exempt portions of the DSP-61s.

The FOIA requires that agencies disclose non-exempt information that is "reasonably segregable" from exempt information.  5 U.S.C. § 552(b).  In order to meet this standard, an agency must show "with 'reasonable specificity'" why a document cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

In this case, the State Department  has demonstrated with reasonable specificity that it has released all reasonably segregable, nonexempt information from the DSP-61s requested by plaintiff.

All of the information provided by applicants on DSP-61s consists of "information obtained for the purpose of consideration of, or concerning, license applications," which must be withheld under 50 U.S.C. App. § 2411(c) (as incorporated into 22 U.S.C. § 2778(e)).  Because plaintiff requested DSP-61 applications, i.e., DSP-61s "submitted by foreign governments," SMF 1, the Department could have denied (and initially did deny) the request in its entirety.  Section 38(e) of the AECA only permits release of "the names of the countries and the types and quantities of defense articles for which licenses are issued" (emphasis added).  Instead, in order to release the maximum amount of segregable information, the Department has identified those responsive DSP-61 applications that resulted in licenses, and it has released the information about those licenses ("the names of the countries and the types and quantities of defense articles") that is permitted by statute.  SMF 13.

13

C.     The Grafeld Declaration is sufficiently detailed to support the Department's summary judgment motion.

The Department has submitted the attached declaration of Margaret P. Grafeld in order to meet its burden of proof as to the records it has withheld.[7]  In a FOIA lawsuit, "the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."   Harrison, 377 F. Supp. 2d at 145 (citations and internal quotation marks omitted).  The court focuses "on the substance, rather than the form, of the information supplied by the government to justify withholding requested information" in a FOIA lawsuit, and "the materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Gallant v. NLRB, 26 F.3d 168, 172-73 (D.C. Cir. 1994) (citations and internal quotations omitted).

Here, the Department has submitted a categorical declaration explaining the basis for its withholdings, rather than a document-by-document index.  A "category-of-document by category-of-document" description is appropriate where the documents being withheld are similar enough that a categorical description would "allow[] the court to trace a rational link

_____

[7]  As the Department of State's Information and Privacy Coordinator, Ms. Grafeld oversees the office responsible for responding to requests made under the Freedom of Information Act, is familiar with this case, and is therefore a proper declarant.  See Grafeld Decl. ¶¶ 1-3; Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).

14

between the nature of the document and the [exemption]." Crooker v. Bureau of Alcohol, Tobacco & Firearms, 789 F.2d 64, 67 (D.C. Cir. 1986) (discussing the use of "generic" determinations for certain law enforcement records); see also United States Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 77 (1989) (approving the use of "categorical rules" and "categorical decisions" on withholdings in appropriate FOIA cases); Mapother v. Department of Justice, 3 F.3d 1533, 1542 (D.C. Cir. 1993) (same). In Goland v. CIA, the D.C. Circuit suggested that documents withheld under FOIA Exemption (b)(3) may be particularly amenable to categorical analysis, holding that "[e]xemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).

A categorical declaration is clearly appropriate in this case. Plaintiff has requested a single type of document – "copies of DSP61s submitted by foreign governments to import military equipment and supplies into the United States for training and related activities." SMF 1. Form DSP-61 is a license application for the temporary import and subsequent export of defense articles. SMF 14. All information entered by an applicant on a form DSP-61 is related to the applicant's license application. SMF 14. All information related to DSP-61 license applications is exempt from disclosure by a single law (section 12(c) of the EAA, which is incorporated by reference into the AECA at 22 U.S.C. § 2778(e)). The same law permits the disclosure of certain information related to licenses resulting from DSP-61 applications.

15

The Grafeld Declaration includes a sample form DSP-61 and explains how FOIA

exemption b(3) prohibits disclosure of information about license applications filed on form DSP-

61s here.  SMF 16 and passim.  In short, the Grafeld Declaration clearly supplies a reasonable

basis for the Court and plaintiff to evaluate the Department's exemption (b)(3) claim.

## <u>CONCLUSION</u>

For the reasons stated herein, defendant's motion for summary judgment should be

granted.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

_____/s/_____
R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney

_____/s/_____
BENTON G. PETERSON, WI BAR #1029849
Assistant United States Attorney
555 Fourth St., NW,
Washington, D.C. 20530
(202) 514-7238

<u>OF COUNSEL</u>

BRIAN J. EGAN,
Attorney-Adviser
United States Department of State,
Office of the Legal Adviser
2201 C St. NW, Room 3422
Washington, D.C.  20520
(202)647-2227

16